# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

_____

|  |  |  |
|---|---|---|
| In re: | ) | Case No. 07-71828-SCS |
|  | ) |  |
| SYED H. ABBAS, | ) |  |
|  | ) |  |
| *Debtor*. | ) | Chapter 13 |
| _____ | ) |  |

## MEMORANDUM OPINION

These matters came on for hearing on November 15, 2007, upon the Objection to Confirmation of Amended Chapter 13 Plan ("Objection") and the Motion for Relief from Automatic Stay and Co-debtor Stay, both filed by Legacy Real Estate, LLC ("Legacy"), in the above-captioned matter. At the conclusion of the hearing, the Court took this matter under advisement. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### FINDINGS OF FACT

Syed H. Abbas ("Abbas") filed his voluntary petition under Chapter 13 of the United States Bankruptcy Code on August 21, 2007 ("Chapter 13 Case"). On September 4, 2007, Abbas filed his Schedule A, which requires disclosure of real property. He listed his personal residence at 1411 Lake Christopher Drive, Virginia Beach, Virginia ("Personal Residence"), and certain property described as follows: 2 Lots: 1236-1237, Block 16, F.B. Area, Karachi, Pakistan ("the Pakistani Property"). The nature of Abbas's interest in the Pakistani Property is described on Schedule A as an "equitable interest." Abbas valued the Pakistani Property at $321,493.00 with no secured claim encumbering it. In his schedules, Abbas listed only three creditors: two creditors holding claims secured by his Personal Residence, and real estate taxes owed to the City of Virginia Beach, Virginia. Abbas did

not schedule any priority or unsecured debt.  On his Schedule B, which catalogs a debtor's personal

property, in his answer to category 19, inquiring as to any equitable or future interests of Abbas,

Abbas listed "[i]heritance pending from deceased relative in Pakistan," which he valued at

$75,000.00.

Also on September 4, 2007, Abbas filed his first Chapter 13 Plan.  The plan proposed that

Abbas would pay the Chapter 13 Trustee $420.00 each month for thirty-six months, then a "lump sum

payment of $75,000.00 from Pakistani inheritance," for total plan funding of $90,120.00.  Legacy

objected to confirmation of the original Chapter 13 Plan on the grounds it was not adequately

protected by the plan, that the plan did not propose to pay the pre-petition arrearage owed to Legacy,

and that the note securing Legacy's indebtedness was due and the debt owed to Legacy could not be

subject to "cram down" under  11 U.S.C. § 506.  Legacy also moved for relief from the automatic

stay as to Abbas pursuant to 11 U.S.C. § 362 and from the co-debtor stay pursuant to 11 U.S.C. §

1301(c) as to Abbas's spouse, Hina Abbas, on substantially the same grounds.[1]  Abbas filed a

response to the motion  seeking relief from the automatic stay in which he admitted certain

allegations and denied others.  Mrs. Abbas did not file a response to the motion.  The Chapter 13

Trustee also objected to confirmation of the original Chapter 13 Plan on the grounds Abbas had not

provided the Trustee with documentation on the judgment in favor of Legacy or on the inheritance

Abbas expected to receive.

On October 25, 2007, a  hearing  was conducted on the objections to confirmation, which

---

[1] Legacy specifically plead that Abbas and Hina Abbas had not provided adequate
protection to Legacy and that cause exists to extinguish the stay and the co-debtor stay as the
debt of Abbas to Legacy is due and payable and such indebtedness had been reduced to
judgment.

were sustained.  A preliminary hearing on Legacy's motion for relief was also held that day, and a

final hearing on that motion was set as to Abbas and Mrs. Abbas for November 15, 2007.  On that

same day, Abbas filed a Motion to Sell, seeking permission from this Court to sell the Pakistani

Property within the next three years ("Motion to Sell").  The Motion to Sell further provided that

Abbas would surrender $75,000.00 of the proceeds of the Pakistani Property to the Chapter 13

Trustee to pay his Chapter 13 Plan balance in full and would submit any proposed sales contract for

the Pakistani Property to the Chapter 13 Trustee for "approval and/or judicial determination if

necessary."  On October 26, 2007, Abbas filed an Amended Schedule A, now describing the nature

of his interest in the Pakistani Property as "fee simple," and an Amended Chapter 13 Plan, which was

identical to the original Chapter 13 Plan except that the proposed contribution from the sale of the

Pakistani Property was increased to $94,640.00, for total plan funding of $109,760.00, and the

addition of paragraph 11, which provided "[d]ebtor will be selling the Pakistani real estate and will

be paying off Chapter 13 Plan balance once sale goes through."

       Legacy objected to the Amended Chapter 13 Plan on the same bases as it had objected to the

original plan, adding that the payment of the delinquent real estate taxes on the Personal Residence

was not provided for in the Amended Chapter 13 Plan and that funding the Amended Chapter 13 Plan

by the sale of the Pakistani Property was speculative.[2]  The Chapter 13 Trustee also objected to the

Amended Chapter 13 Plan, contending that the primary funding was based on the sale of the Pakistani

Property, that the ownership of the Pakistani Property by Abbas was being questioned, and the plan

was neither feasible nor proposed in good faith.  On November 20, 2007, the Chapter 13 Trustee

---

[2]  The objection of Legacy to the Amended Chapter 13 Plan also complained that "[i]t is
not clear from the Debtors schedules who owns the [Pakistani] property."

3

withdrew his objection to the Amended Chapter 13 Plan.[3]

On November 15, 2007, the Court conducted a final hearing on the Motion for Relief from Stay and Co-debtor Stay, and a hearing on the Objection to Confirmation of Legacy to the Amended Chapter 13 Plan.[4] At the hearing, James J. Stewart, the managing member of Legacy ("Stewart"), testified.  Stewart met Abbas in 2004 when he offered Abbas assistance in preventing the foreclosure of the deed of trust on the Personal Residence.  Tr. at 4–6.  Legacy advanced monies to Abbas to cure the arrearage on the existing mortgage on the Personal Residence, and Abbas and his wife, on December 28, 2004, made a promissory note payable to Legacy in the amount of $188,153.02 ("Note").  Tr. at 5–6 (referencing Plaintiff's Exhibit 1, Demand Credit Line Promissory Note, dated December 28, 2004).  The Note was secured by a Deed of Trust on the Personal Residence.  Tr. at 7. In addition, simultaneously, Abbas entered into an option agreement and a purchase agreement with Legacy, wherein Abbas agreed that Legacy could take possession of the Personal Residence on January 15, 2005.  Tr. at 7–8.  The option agreement and the purchase agreement apparently were not reduced to writing until a later date.[5]

Abbas remained in possession and did not vacate the Personal Residence in 2005.  Tr. at 9. Subsequently, Abbas sued Legacy; that litigation was ultimately dismissed.  Tr. at 11.  Legacy thereafter brought suit against Abbas and obtained judgment by default in the amount of $71,153.37.

---

[3] Counsel for the Chapter 13 Trustee attended these joint hearings notwithstanding the withdrawal of the Trustee's objection to the Amended Chapter 13 Plan.

[4] On December 12, 2007, Abbas filed a Motion for Substitution of Counsel moving to substitute John E. Bedi, Esquire, in place of Timothy V. Anderson, Esquire. The Court entered an Order Approving this Motion on December 17, 2007.

[5] A specific date on which that agreement was reduced to writing was not adduced during the examination of Stewart.

Legacy attempted to foreclose upon the Deed of Trust, which sale was cancelled due to the bankruptcy filing of Abbas. Tr. at 13. Stewart testified the present balance on the Note is $78,367.80. Tr. at 13. Stewart's testimony left unclear how this balance was derived. While the original principal amount of the Note was $188,153.02, Legacy apparently also advanced on the Abbases behalf the sum of $24,342.03 to the holder of the first mortgage on the Personal Residence to abate the then-pending foreclosure, along with three subsequent payments to the first mortgage holder totaling $4,306.73. Tr. at 15.

Abbas was the only other witness. Abbas admitted that in his recently amended Schedule A of his bankruptcy schedules he listed the Pakistani Property. When asked how he came to acquire the Pakistani Property, Abbas responded "[m]y father transferred the property to me and I have the papers." Tr. at 21. When he was next asked when the transfer occurred, Abbas responded, "In 2007–2004." Abbas admitted that he had filed a Chapter 7 bankruptcy in 2004. *Id.*

Concerning the Pakistani Property, Abbas testified as follows:

Q. Did you list the property in Pakistan as an asset?

A. At the time my father was alive and it was in the will that when he died that I would inherit the property.

Q. The question is when was the property actually transferred to you?

A. In '97.

Q. In '97?

A. No. Hold on a second. After my father passed then I got property.

. . . .

Q. Did you own the property prior to your father passing away or did you inherit the

property after he passed away?

A.  It was will [*sic*] of my father that he transferred the property in my name and in the will

it says when he passed away I would get it.

Q.  And in what month in 2004 did he pass away?

A.  November.

Q.  Did you notify your bankruptcy trustee at the time you were entitled to an inheritance?

A.  No.

Q.  And you didn't list any ownership interest in the property in Pakistan?

Tr. at 21–23.

At this juncture, counsel for Abbas objected to the relevancy of this line of questions, which

the Court overruled.  Counsel for Abbas then stated, "On the issue of when he inherited the property

or what he did in his previous bankruptcy, my client would invoke his Fifth Amendment right

regarding anything that may or may not have occurred during his previous bankruptcy."  Tr. at 23.

Counsel for Legacy again asked, "Do you know when you inherited the property?", to which Abbas

responded, "I take the Fifth."  *Id.*  Abbas proceeded to answer a series of questions concerning the

current value and condition of the Pakistani Property and confirmed that there are no liens on the

Pakistani Property.  Tr. at 24–26.  Abbas has given his father-in-law a power of attorney for the

purpose of attempting to sell the Pakistani Property.  Tr. at 26–27.

Abbas admitted he was behind in his payments to the City of Virginia Beach for real estate

taxes but intends to bring these payments current when he receives his income tax refund in January,

2008.  Tr. at 28.  Abbas currently works for the City of Portsmouth, Virginia, and expressed his

intention to additionally work part-time to procure more income.  Tr. at 30.  Abbas also asserted that

6

he was current on his mortgage payments to the holder of the first mortgage on the Personal

Residence and on his homeowner dues.[6]  Tr. at 31, 34.  Abbas has no unsecured creditors.  Tr. at 35.

During the argument of the various matters, the Court inquired of counsel for the Chapter 13

Trustee as to the circumstances of the withdrawal of the objection to confirmation earlier filed by the

Chapter 13 Trustee.  Counsel for the Chapter 13 Trustee advised the Court that the Trustee had been

provided copies of two deeds and the will of Abbas's father.  Tr. at 42.  Counsel for the Chapter 13

Trustee further represented to the Court that it appeared from the deeds provided by Abbas that he

had been transferred the Pakistani Property in March, 1994.  Tr. at 43.  The Court ordered that the

documents Abbas provided to the Chapter 13 Trustee be filed as a record in the Chapter 13 Case.  Tr.

at 45.  The Chapter 13 Trustee provided the records earlier forwarded to him by Abbas to the Court

on November 16, 2007.

A review of the records of this Court indicate that Abbas and his wife, Hina Abbas, filed a

petition under Chapter 7 of the Bankruptcy Code on October 7, 2004, being designated as case

number 04-75962-SCS ("Chapter 7 Case").[7]  Abbas filed his Schedules and Statement of Financial

Affairs the same day.  On their Schedule A, the only real estate scheduled was the Personal

Residence.  The Pakistani Property was not listed.  In addition to his mortgage on the Personal

---

[6] Counsel for Legacy attempted to elicit an admission from Abbas that he was paying a monthly amount to the first mortgage holder less than the amount contractually required, but Abbas asserted "[n]obody send us a letter or nobody told us your payment is this and you are paying that." Tr. at 32.

[7] On September 18, 2007, the United States Trustee for Region Four filed a Complaint in against Abbas asserting that his discharge in the Chapter 7 Case disqualified him from receiving a discharge in the Chapter 13 Case pursuant to 11 U.S.C. § 1328(f)(1) because he received his Chapter 7 discharge within four years of his filing of the Chapter 13 Case. Abbas entered into a consent order with the United States Trustee, which was entered by the Court on November 14, 2007, which provided Abbas was not entitled to receive a discharge in the Chapter 13 Case.

Residence, Abbas and his wife listed unsecured debt totaling $58,372.00.[8]  Schedule B in the Chapter 7 Case did not list any inheritance or other equitable interest of Abbas.  On November 16, 2004, the Chapter 7 Trustee  certified that he had performed the duties required of a trustee under 11 U.S.C. § 704 and had concluded that there were no assets to administer for the benefit of creditors of the estate.  On January 25, 2005, Abbas received his Chapter 7 discharge.

## CONCLUSIONS OF LAW

### I.
### Good Faith and Confirmation

The standards for confirmation of a Chapter 13 Plan with respect to the good faith of the debtor are established by Section 1325(a)(3) of the Bankruptcy Code:  "[T]he court shall confirm a plan if—the plan has been proposed in good faith and not by any means forbidden by law . . . ."  11 U.S.C. § 1325(a)(3) (2007).

"Congress has nowhere in the statute provided a definition of the term 'good faith.'  The legislative history is similarly silent on this point."  *Deans v. O'Donnell* (*In re Deans*), 692 F.2d 968, 969 (4th Cir. 1982).  In *Deans*, the Fourth Circuit Court of Appeals set forth a non-exhaustive list of factors that may be considered when determining whether a debtor has proposed a plan in good faith pursuant to Section 1325(a)(3).  *Id.* at 972.  Noting that "a court must make its determination based on all militating factors," the Court wrote:

> Without attempting to be exhaustive or to establish a criteria check-list, these factors might include, depending on the particular case, not only the percentage of proposed payment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and

---

[8]  Abbas subsequently filed Amended Schedules adding two additional unsecured creditors, bringing his total unsecured debt to $59,372.00.

amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor. Although the court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order to fairly apply the statute as now written.

*Id.* To this non-exhaustive list, the Fourth Circuit has added the debtor's pre-petition conduct as a factor that may be considered. *See Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986).[9] Ultimately, "the totality of circumstances must be examined on a case by case basis . . . ." *Deans*, 692 F.2d at 972; *see also Neufeld*, 794 F.2d at 152. Further, "the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan. . . ." *Deans*, 692 F.2d at 972 (citations omitted); *see also In re Chaney*, 362 B.R. 690, 694 (Bankr. E.D. Va. 2007) (same).

In addition, because the Chapter 13 Case of Abbas follows in relative close proximity to his Chapter 7 Case, additional "good faith" factors are implicated. *In re Cushman*, 217 B.R. 470, 477 (Bankr. E.D. Va. 1998). The *Cushman* factors are:

1. The proximity in time of the chapter 13 filing to the chapter 7 filing.
2. Whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a chapter 13 plan.
3. Whether the two filings accomplish a result that is not permitted in either chapter standing alone.
4. Whether the two filings treat creditors in a fundamentally fair and equitable

---

[9] The additional *Neufeld* factors are:

1. Whether a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and whether the chapter 13 plan proposes to repay only a minimal portion of those claims.
2. Whether, despite even egregious pre-filing conduct, the plan represents a good faith effort to satisfy creditors' claims.

*In re Taylor*, 261 B.R. 877, 884 (Bankr. E.D. Va. 2001) (citing *Neufield*, 794 F.2d at 152–53).

9

manner or whether they are rather an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code.

*Id.*

Finally, the "[d]ebtor bears the burden of proving that a plan is proposed in good faith under 11 U.S.C. § 1325(a)(3)." *In re Delbrugge*, 347 B.R. 536, 540 (Bankr. N.D. W. Va. 2006) (citing *In re Smith*, 328 B.R. 797, 802 (Bankr. W.D. Mo. 2005); *In re Virden*, 279 B.R. 401, 407 (Bankr. D. Mass. 2002)).  As Judge Waldrep has observed, "[t]he law in the Fourth Circuit on this issue remains unchanged by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-9, 119 Stat. 23 ('BAPCPA')." *In re Cauthen*, No. 06-11092, 2007 WL 1577860, at *3 n.14 (Bankr. M.D.N.C. May 31, 2007) (slip copy).

Judge Smith has explained the duty of the court in making a determination of good faith.

"Irrespective of any objections to confirmation," Section 1325 imposes on the bankruptcy court an independent "duty to insure compliance with the provisions of the Bankruptcy Code."  Therefore, the bankruptcy court is not a rubber stamp.  It must scrutinize every proposed plan, regardless of whether someone objects.  Thus, in ascertaining whether a Chapter 13 plan warrants confirmation, the bankruptcy court always and necessarily will turn to the debtor proposing the plan.  The interposition of an objection to confirmation surely does not relieve the Chapter 13 debtor from the ordinary burden of proving the right to bankruptcy relief.

*Tillman v. Lombard*, 156 B.R. 156, 159 (E.D. Va. 1993) (quoting *In re Bowles*, 48 B.R. 502, 505 & n.3 (Bankr. E.D. Va. 1985).  Accordingly, the Court will examine the evidence before it to determine whether Abbas filed his Chapter 13 Plan in good faith, notwithstanding the absence of a good faith based objection on the part of Legacy or any creditor.

II.

Invocation of the Fifth Amendment Privilege Against Self- Incrimination by Abbas
and Good Faith Under Section 1325 of the Bankruptcy Code

This Court has previously considered the implications of invocation of the Fifth Amendment

privilege against self-incrimination by a debtor in the context of a complaint to determine

dischargeability in *Parker v. Grant* (*In re Grant*), 237 B.R. 97 (Bankr. E.D. Va. 1999).  There the

debtor-defendant repeatedly declined to answer the questions of plaintiff's counsel on Fifth

Amendment grounds concerning the transaction which was the subject of the complaint.   In

reviewing the implications of the assertion of the privilege by the debtor, this Court found:

> The Supreme Court in *Baxter* delineated the limits of both the sword and
> shield of the Fifth Amendment when asserted by a civil party.  There a prisoner
> invoked his Fifth Amendment privilege in the course of a prison disciplinary hearing.
> In stating its belief the disciplinary hearing was civil in nature, the Court stated that
> while the prisoner may use his privilege to decline to testify, "silence in the face of
> accusation is a relevant fact not barred by the Due Process Clause."  Critical to the
> analysis by the Court was the concept that the "adverse inferences" against the
> asserting party were triggered by the introduction of probative evidence by the
> adverse party, finding that it was "undisputed that an inmate's silence in and of itself
> is insufficient to support an adverse decision by the Disciplinary Board."
>
> This theme is mirrored in subsequent cases considering the issue in different
> contexts.  In *Bathalter*, a defendant pled to the complaint lodged against him his
> refusal to either admit or deny the allegations founded upon his assertion of his Fifth
> Amendment privilege.  The plaintiff moved for entry of a summary judgment on the
> basis the privilege based refusal to admit or deny entitled it to have all allegations
> taken as admitted.  In denying the summary judgment motion, the Court relied on the
> ruling in *Baxter* to conclude that founding an adverse judgment solely upon the
> assertion of the Fifth Amendment privilege would represent an unconstitutional
> compulsion against assertion of the privilege.

*Id.* at 110– 11 (citations omitted) (quoting *Baxter v. Palmigiano*, 425 U.S. 308, 317, 319 (1976);

citing *Nat'l Acceptance Co. of Am. v. Bathalter*, 705 F.2d 924, 930 (7th Cir. 1983)).

Accordingly, this Court concluded that:

11

> The recognition of the necessity to introduce probative evidence conversely dooms the efforts of the plaintiffs to use the invocation of the Fifth Amendment by [the debtor] to establish proof of facts where no evidence was introduced or admitted. In evaluating whether plaintiffs have succeeded in carrying their burden of proof as to each element which must be shown to prevail in their Complaint, the Court will assess whether [the debtor's] refusal to answer provides an inferential supplement to the evidence which was accepted at trial.

*Id.* at 111–12.[10]

Other courts have considered assertion of the Fifth Amendment privilege by a debtor in the context of confirmation of a reorganization plan.  In *McCormick v. Banc One Leasing Corp.* (*In re McCormick*), 49 F.3d 1524 (11th Cir. 1995) (per curiam), a debtor's declination to testify in a related adversary proceeding by reason of his assertion of his Fifth Amendment privilege was found by the bankruptcy court to be sufficient to show the lack of good faith of the debtor in his proposed Chapter 11 Plan.  *Id.* at 1525.  In reversing, the Eleventh Circuit Court of Appeals found the privilege assertion, without other support, was insufficient to deny confirmation:

> The Bankruptcy Code does not dictate nor have we found any other court to have held that a bankruptcy court may deny confirmation of a reorganization plan solely because the debtor refused to testify on the basis of the privilege against self-incrimination in a related proceeding during the pendency of a Chapter 11 case.
>
> While his case was proceeding, one of McCormick's creditors, First Interstate Credit Alliance, Inc., filed a separate adversary proceeding against McCormick seeking to declare a debt non-dischargeable under section 523 of the Code.  During a related deposition, McCormick asserted his Fifth Amendment privilege against self-incrimination and refused to testify.  Notably, McCormick and First Interstate later agreed to a compromise on the dispute.  The bankruptcy court entered an order approving the compromise.  Prior to the final confirmation hearing, after McCormick

---

[10]   The First Circuit Court of Appeals has concluded similarly in the context of a complaint to deny a Chapter 7 discharge.  *Marrama v. Citizens Bank of Mass.* (*In re Marrama*), 445 F.3d 518, 522 (1st Cir. 2006) (citing *In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003)) ("It is clear that the bankruptcy court can draw an inference at trial from a party's invocation of a Fifth Amendment privilege.").

filed the necessary disclosure statement and proposed reorganization plan, three creditors, Advanta Leasing Corporation, Banc One Leasing Corporation, and First Interstate, filed objections to the confirmation claiming McCormick's plan was not proposed in good faith, as required by section 1129(a)(3) of the Bankruptcy Code.

Only Advanta cited as its reason for objecting to the plan McCormick's assertion of the Fifth Amendment during the course of the proceedings. The bankruptcy court concluded that McCormick's failure to testify in some of the proceedings was contrary to the goals of the Bankruptcy Code and was evidence he did not propose the plan in good faith.

As long as McCormick's failure to testify at the First Interstate deposition did not impede the basic bankruptcy administration of his case, however, assertion of his Fifth Amendment privilege alone cannot be the basis for denying confirmation of his plan.

It may well be that the bankruptcy court may have denied McCormick's confirmation for reasons additional to his refusal to testify in the First Interstate deposition, or that his refusal impeded the administration of the Chapter 11 plan in a way not disclosed by this record. If so, that issue may be addressed on remand. Being unable to find support in this record for the bankruptcy court's finding of bad faith under section 1129(a)(3) of the Bankruptcy Code on the refusal to testify alone, however, we must vacate the decision of the district court and remand for further proceedings consistent with this opinion.

*Id.* at 1526–27 (citing *In re Connelly*, 59 B.R. 421 (Bankr. N.D. Ill. 1986)).

This issue was also considered in *In re Girdaukas*, 92 B.R. 373 (Bankr. E.D. Wis. 1988), in the specific context of an objection to confirmation of a Chapter 13 for a lack of good faith. There the debtor testified at his § 341 Meeting of Creditors concerning his current assets but declined to testify on the basis of his Fifth Amendment privilege concerning his debts. *Id*. at 375. The debtor also made the same declination to testify concerning his debts at a Federal Rule of Bankruptcy Procedure 2004 hearing. Because of the debtor's refusal to testify, the Chapter 13 Trustee could not recommend that the debtor's plan had been filed in good faith. *Id*. at 376. The court observed the difficult burden a debtor faces when a Fifth Amendment privilege is asserted:

A debtor may assert the Fifth Amendment privilege in a bankruptcy proceeding. Absent a grant of immunity, a debtor can assert the privilege, refuse to

testify, and still retain the right to a chapter 7 discharge under § 727(a)(6), and it has been held that these rights granted under § 727(a)(6) are also available to the debtor under § 727(a)(5). The fact that Fifth Amendment rights are specifically granted to the debtor in a chapter 7 case, however, does not necessarily mean that the debtor can safely claim them in the context of a chapter 13 case. Those sections are only applicable to a case under chapter 7.

It is questionable whether a debtor can ever obtain confirmation of a chapter 13 plan while claiming the Fifth Amendment privilege. If the debtor has the burden of proof on the issue of good faith and refuses to testify, it will be very difficult for him to meet that burden.[11]

*Id.* (citing 11 U.S.C. § 103(b); *Martin-Trigona v. Belford* (*In re Martin-Trigona*), 732 F.2d 170 (2d Cir. 1984); *Olson v. Potter* (*In re Potter*), 88 B.R. 843 (Bankr. N.D. Ill. 1988)).

The court there, in assessing a totality of the circumstances analysis of good faith, denied confirmation of the Chapter 13 Plan. *Id.* at 377. It remains to consider the evidence of the totality of the circumstances in the instant matter to determine whether Abbas's Chapter 13 Plan has been filed in good faith.

III.

Was Abbas's Chapter 13 Plan Filed in Good Faith?

Crucial to this Court's analysis of the issue of whether Abbas filed his Chapter 13 Plan in good faith is an analysis of the circumstances surrounding the Pakistani Property. An examination of the documents Abbas furnished to the Chapter 13 Trustee concerning that property, which the Court ordered be filed with the records of this proceeding,[12] appear to support the conclusion that

---

[11] The court suggested the sole circumstance where confirmation was conceivable in the face of assertion of a Fifth Amendment privilege was where a plan proposed payment of one hundred percent of a debtor's claims. *In re Girdaukas,* 92 B.R. at 376 n.2.

[12] The Court may order the supplementation of the evidentiary record in a proceeding. *See Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 295 (4th Cir. 1990) (finding that it is within the discretion of a trial court to correct any errors or gaps in

Abbas owned the Pakistani Property at the time of his Chapter 7 Bankruptcy and failed to disclose this asset on his schedules and Statement of Financial Affairs in the Chapter 7 Bankruptcy Case.

The documents surrendered to the Chapter 13 Trustee consist of two deeds and the will of Abbas's father.  The deeds, both executed on April 28, 1994, conveyed registered gifts from Matloob Hussein to Abbas of two parcels of real estate located in Karachi, Pakistan (the "Deeds").[13]  Abbas testified that a residence is located on the Pakistani Property and that he estimated the Pakistani Property to be worth $160,000.00.  Tr. at 26.  The will of Abbas's father (the "Will"), which appears to have been executed on July 26, 1997, states that "I have owned" the two parcels identified in the Deeds and that "said properties/assets are absolutely free from all claims, liens, disputes, arrears, liabilities, mortgages/pledges, charges of whatsoever nature."  The Will further provides "That I have already gifted my house Rs. 1236– 1237 Block 16, F B Area, Karachi, absolutely to my son Mr. Hassan Abbas"[14] and provides for the distribution of certain  monies to other legatees.  Abbas testified that his father died  in November 2004.

The Chapter 7 Petition  was filed on October 7, 2004, some ten years after it appears Abbas was deeded the Pakistani Property by his father under the Deeds.  A review of the Chapter 7 schedules of Abbas reveals that the only real estate scheduled was the Personal Residence of Abbas

---

the evidentiary record); *O.M.I. Corp. of Am. v. Kelsh Instrument Co.*, 279 F.2d 579, 584-85 (4th Cir. 1960) (same).

[13]  The Deeds are written originally in the English language and apparently are not the result of a translation.  Abbas advised the Court that in Pakistan legal documents relating to real estate are originally written in English.  Tr. at 44.

[14] Abbas is variously identified as "Syed Hassen Abbas Rizvi" and "Syed Hasan Abbas Rizvi" in the Deeds, "Hassan Abbas" in the Will, "Syed Hasan Abbas" in the petition filed in the Chapter 7 Case and as "Syed H. Abbas" in the petition filed in the Chapter 13 Case, but it appears each reference is to the Debtor here, Syed Abbas.

in the city of Virginia Beach, Virginia. The schedules filed by Abbas in the Chapter 13 Case scheduled the Pakistani Property at a value of $321,493.00, listed the Pakistani Property as unencumbered,[15] and described Abbas's interest as an "equitable interest." While Abbas described a number of the circumstances concerning the Pakistani Property in his testimony at the confirmation hearing, he critically declined to answer the specific question of when he acquired the Pakistani Property and instead asserted his Fifth Amendment privilege against self-incrimination.

Without any explanation from Abbas, the Deeds and the Will appear to prove that the Pakistani Property was deeded to Abbas by his father at least ten years before his Chapter 7 Case, yet there was no disclosure of the Pakistani Property in Abbas's schedules or Statement of Financial Affairs filed in the Chapter 7 Case. However, in the Chapter 13 Case, which Abbas filed less than three years after the filing of the Chapter 7 Case, the Pakistani Property is scheduled and represented to have a value of over $300,000.00. Indeed, the principal source of funding of Abbas's Chapter 13 Plan is the proposed sale of the Pakistani Property.

Although the Court's discretion in making the good faith determination is necessarily a broad one, the totality of circumstance must be examined on a case by case basis in order to fairly apply the circumstances of each debtor. In assessing the factors relating to good faith set forth in *Deans v. O'Donnell*, this Court concludes as follows. First, as to the percentage of proposed repayment to creditors, the Court notes that Abbas proposes to repay his creditors 100% of their claims. However, the Chapter 13 Plan is funded primarily by the liquidation of an asset undisclosed to Abbas's creditors in his Chapter 7 Case. Abbas's amended plan proposes total funding of $109,760.00, with

---

[15] Interestingly, on Schedule B filed in the Chapter 13 Case, Abbas also lists in category 19 that he has an equitable or future interest, other than those listed in Schedule A, in an "[i]heritance pending from deceased relative in Pakistan," which he valued at $75,000.00.

$94,640.00 of that amount to be paid to the Chapter 13 Trustee following the proposed sale of the Pakistani Property. Abbas proposes that the remaining $15,120.00 would be paid in equal monthly payments of $420.00 over thirty-six months. As to the second factor, the debtor's financial situation, it is clear that Abbas's financial situation is dire insofar as his inability to repay Legacy except through liquidation of the Pakistani Property. With respect to the time period in which payments will be made, Abbas's proposed payments are minimal for potentially up to three years while he attempts to liquidate the Pakistani Property. Abbas's employment history is unclear except for his testimony that he now works for the City of Portsmouth and intends to procure additional part-time employment. There are no unsecured creditors in the Chapter 13 Case.

These factors, however, pale in consideration to Abbas's prior bankruptcy filing and his honesty (or lack thereof) in the Chapter 7 Case in failing to disclose the Pakistani Property. As extensively outlined here, Abbas has failed to offer any exculpatory explanation for his failure to properly disclose and schedule the Pakistani Property in his previous case. Finally, with respect to any unusual or exceptional problems facing the debtor, even without of omnipresent concern of Abbas's failure to disclose the Pakistani Property in the Chapter 7 Case, he seeks to largely fund his Chapter 13 Plan through the sale of real property in a foreign country that, by his testimonial admission, is currently experiencing substantial political turmoil that has, at least for the moment, adversely affected the prospects for sale of the Pakistani Property.

With respect to the first *Neufield* factor as to whether a major portion of the claims sought to be discharged arises out of pre-petition fraud or other wrongful conduct and whether the Chapter 13 plan proposes to repay only a minimal portion of those claims, this factor is inapplicable here as the debts intended to be paid in the Chapter 13 Case do not appear to have arisen under these

17

circumstances.  However, the second *Neufield* factor is damning here, as Abbas's conduct in failing

to disclose the Pakistani Property in his previous Chapter 7 Case negates any good faith effort on the

part of Abbas to satisfy creditors' claims in the Chapter 13 Plan.

Finally, the *Cushman* factors must be analyzed concerning good faith when a Chapter 13 case

follows closely on the heels of a Chapter 7 filing.  While the Chapter 13 Case is not immediately

proximate to the Chapter 7 Case, a review of the evidence here discloses no material change in

circumstances on the part of Abbas since the Chapter 7 Case, except, of course, the current disclosure

of the Pakistani Property and Abbas's attempted liquidation of it to satisfy the claim of Legacy.  To

confirm Abbas's Chapter 13 Plan here and thereby allow him to now utilize a valuable asset

previously undisclosed in the Chapter 7 Case would permit Abbas to discharge all of his prior

unsecured debt while only later exposing this asset to pay a subsequently incurred debt, a result

fundamentally unfair to Abbas's creditors in his Chapter 7 Case and highly abusive of the purpose

and spirit of the Bankruptcy Code.

A review of the totality of the circumstances here suggests that Abbas has not carried his

burden of proving that his Chapter 13 Plan was filed in good faith.  As the Fourth Circuit Court of

Appeals has concluded "[t]his good faith inquiry is expressly mandated under § 1325(a)(3) of the

Bankruptcy Code and has been expressly held by this circuit to encompass 'both prepetition conduct

and prior bankruptcy filings by the debtor.'"  *Solomon v. Cosby* (*In re Solomon*), 67 F.3d 1128, 1134

(4th Cir. 1995) (quoting *Neufeld v. Freeman*, 794 F.2d 149, 150 (4th Cir. 1996)).  Here the

documents Abbas submitted to the Chapter 13 Trustee, apparently for the purpose of persuading the

Chapter 13 Trustee of the feasibility of funding his Chapter 13 Plan with the sale of the Pakistani

Property, appear to substantiate that Abbas was deeded the Pakistani Property some ten years prior

to his Chapter 7 Case.

Abbas did not disclose the Pakistani Property in his Chapter 7 Case but now has scheduled the Pakistani Property in his pending Chapter 13 Case and seeks to fund his Chapter 13 Plan through the proposed sale of this previously undisclosed asset.  By Abbas's own schedules, the Pakistani Property has substantial value, being listed at a value of over $300,000.00.  Abbas, by his invocation of his Fifth Amendment privilege, has declined to testify under oath as to when he acquired the Pakistani Property.  Without the benefit of any exculpatory evidence from Abbas, it would appear that what Abbas seeks to do in this Chapter 13 Case is to fund his plan by utilizing an asset that he failed to disclose in an earlier bankruptcy filing before this Court.[16]

The Court is unable to ascertain, due to Abbas's invocation of his Fifth Amendment privilege, whether the failure to schedule the Pakistani Property in the Chapter 7 Case was not fraudulently motivated.  Based upon the evidence that is before the Court, it appears Abbas failed to disclose his ownership of a valuable asset that may have available to satisfy his creditors claims in the Chapter 7 Case.  It is of no moment that the Pakistani Property is in a distant country and presumably may have been difficult for the trustee in the Chapter 7 Case to liquidate.[17]  The obligation of Abbas to

---

[16] Abbas on December 17, 2007, filed a Motion to Reopen the Chapter 7 case to permit him to schedule the Pakistani Property.  In this Motion to Reopen, Abbas now asserts that the Pakistani Property was inadvertently omitted from his schedules in the Chapter 7 case and that unbeknown to Abbas, his father made the Deed of Gift of the Pakistani Property to him.  This post-hearing revelation is unpersuasive to the Court in light of his failure to offer an explanation at the confirmation hearing and his assertion of his Fifth Amendment Privilege there.

[17] The necessity of Abbas to list the Pakistani Property in his Schedules in the Chapter 7 Case is manifest notwithstanding its physical location in Pakistan.  Property of the estate, as defined in Section 541, includes property of the debtor located outside the United States.  *French v. Liebman* (*In re French*), 440 F.3d 145,151 (4th Cir. 2006) ("'[P]roperty of the estate' includes both foreign and domestic property."); *see also Thurmond v. Rajapakse* (*In re Rajapakse*), 346 B.R. 233, 236 (Bankr. N.D. Ga. 2005) (citing *Hong Kong and Shanghai Banking Corp. v. Simon*

schedule the Pakistani Property in the Chapter 7 Case is certain. Now to subsequently disclose his ownership of the Pakistani Property and to base his Chapter 13 Plan upon its liquidation, without explanation as to why he failed to disclose this asset in his previous bankruptcy case, surely leads to the inevitable conclusion that this Chapter 13 Plan is not proposed in good faith by Abbas. No policy is more central in bankruptcy than the obligation of a debtor to fully disclose his assets and liabilities. To now allow a debtor, whose failure to schedule a valuable asset he owned at the time of his first filing is unexplained due to his invocation of his Fifth Amendment privilege against self-incrimination, to use this asset to fund his Chapter 13 Plan would shred this essential requirement of full and complete disclosure by debtors.

Furthermore, even if Abbas's testimony was valid that he did not "inherit" the Pakistani Property until his father's death in November 2004, a statement directly contradicted by the Deeds and the Will, Abbas was nonetheless obligated to disclose this alleged inheritance in the Chapter 7 Case. Section 541 of the Bankruptcy Code expressly includes as property of the estate "[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—(A) by bequest, devise, or inheritance." 11 U.S.C. § 521 (a)(5)(A) (2007). Abbas, as are all debtors before this Court, was expressly ordered to make available and

_____

(*In re Simon*), 153 F.3d 991, 996 (9th Cir. 1998); *GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A.* (*In re Globo Comunicacoes e Participacoes S.A.*), 317 B.R. 235 (S.D.N.Y. 2004); *In re Yukos Oil Co.*, 321 B.R. 396, 406 (Bankr. S.D. Tex. 2005); *Nakash v. Zur* (*In re Nakash*), 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996); *Deak & Co. v. Soedjono* (*In re Deak & Co.*), 63 B.R. 422, 427 (Bankr. S.D.N.Y. 1986)). Furthermore, it is within the power of a trustee pursuant to 11 U.S.C. § 521 to require a debtor to turnover all foreign assets and account for all foreign assets to a Chapter 7 Trustee, including foreign real estate. *In re Rajapakse*, 346 B.R. at 236–37.

turnover to the trustee in his Chapter 7 Case any property he received by bequest within 180 days of

his filing date.[18]  Federal Rule of Bankruptcy Procedure 1007(h) as in effect at the time of the filing

of Abbas's Chapter 7 Case required Abbas to amend his schedules to disclose the alleged inheritance

of the Pakistani Property within ten days after learning of such inheritance.[19]  *See also Pietri v. Pietri*

---

[18]  The order of this Court issued to Abbas on October 10, 2004, in his Chapter 7 Case
provided, in relevant part, as follows:

> An order for relief  having been entered herein pursuant to Title 11 U.S.C.
> Chapter 7 upon a petition filed by you in the United States Bankruptcy Court;
> It is ORDERED that,
> . . . .
> You shall make available and turn over to the Trustee any property that you
> acquire or become entitled to acquire within 180 days after the date of the filing
> of your bankruptcy petition, if such property or your rights to acquire such
> property is:
> (A) By bequest, devise or inheritance. . . .

Syed Hasan Abbas and Hina Mohsin Abbas, Case Number 04-75962-SCS, Docket Entry 6,
Administrative Order to Debtor, October 10, 2004.

[19]  Federal Rule of Bankruptcy Procedure 1007(h) in effect at the time of the Chapter 7
Case provided as follows:

> (h) Interests acquired or arising after petition
>
> If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled
> to acquire any interest in property, the debtor shall within 10 days after the
> information comes to the debtor's knowledge or within such further time the court
> may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11
> reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13
> individual debt adjustment case.  If any of the property required to be reported under
> this subdivision is claimed by the debtor as exempt, the debtor shall claim the
> exemptions in the supplemental schedule.  The duty to file a supplemental schedule
> in accordance with this subdivision continues notwithstanding the closing of the
> case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter
> 13 case with respect to property acquired after entry of the order confirming a
> chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

Fed. R. Bankr. P. 1007(h) (2004).

(*In re Pietri*), 59 B.R. 62, 65–67 (Bankr. M.D. La. 1986) (denying discharge due to concealment of property of estate was warranted where debtor failed to disclose $100,000 certificate of deposit, succession interest which included real estate and valued for inheritance tax purposes at more than $7,000, and $11,000 of property of estate received approximately 100 days after filing of petition). Accordingly, even if Abbas's unsupported assertion were true that he did not inherit the Pakistani Property until his father's death in November, 2004, Abbas failed to properly disclose the Pakistani Property in the Chapter 7 Case under any circumstances.

The non-disclosure of the Pakistani Property in the Chapter 7 Case is so corrosive of fundamental bankruptcy policy that the Court must conclude that, under the totality of the circumstances here, Abbas's Chapter 13 Plan is not proposed in good faith and confirmation must be denied.[20]  Because the Court has concluded that Abbas's Chapter 13 Plan was not proposed in good faith, the Court need not reach the other grounds which served as the bases for Legacy's Objection to Confirmation.

A separate order shall be entered denying confirmation and further directing that, notwithstanding Local Rule 3015-2(H) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia, this case shall not be dismissed pursuant to said rule and shall remain

---

[20]  While the clear command of the Fourth Circuit Court of Appeals is to judge "good faith" by consideration of the totality of the debtor's circumstances, Abbas's invocation of his Fifth Amendment privilege against self-incrimination concerning questions asked of him under oath relating to when he was transferred the Pakistani Property has impeded administration of his case by negating the opportunity of the Court to further investigate the circumstances of this transfer and its effect on a determination of Abbas's good faith here.  *See In re Connelly*, 59 B.R. 421, 430 (Bankr. N.D. Ill. 1986).  However, notwithstanding the conclusion of some courts that a finding that the invocation of the Fifth Amendment privilege has impeded the administration of a case is sufficient for denial of confirmation, the Court here has founded its decision on an evaluation of the totality of circumstances of Abbas and not simply the invocation of the Fifth Amendment privilege by Abbas.

on this Court's docket as an open case until further order of this Court.[21]

V.

The Motion for Relief and for Co-debtor Relief

Legacy prays for entry of an order granting it relief from the automatic stay as to Abbas and from the co-debtor stay as to Hina Abbas.  Legacy's grounds for relief are the alleged inability of Abbas to offer adequate protection to Legacy and that cause exists as the debt of Abbas to Legacy is due and payable and previously has been reduced to judgment.  As to the co-debtor stay pursuant to 11 U.S.C. § 1301, Legacy simply states it "has been precluded from seeking recovery of its claim from the Co-debtor."

A decision to lift the automatic stay is within this Court's discretion.  *Robbins v. Robbins* (*In re Robbins*), 964 F.2d 342, 345 (4th Cir. 1992).  Section 362(d)(1) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

---

[21]  Local Rule 3015-2(H) of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia provides that, after denial of confirmation of a Chapter 13 plan, should a modified plan not be filed within 20 days, the case may be dismissed by order of the Clerk.  This case should remain on the Court's docket and not subject to automatic dismissal pursuant to the local rule to permit the United States Trustee and other creditors or parties in interest to consider whether a motion to convert this case to a proceeding under Chapter 7 of the Bankruptcy Code and/or a motion to consolidate this case with a reopened Chapter 7 Case of Abbas should be placed before the Court for consideration or whether such motions should be considered by the Court *sua sponte.  See, e.g.*, *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962); *In re Taylor*, 261 B.R. 877, 889 (Bankr. E.D. Va. 2001).

11 U.S.C. § 362(d)(1) (2007).

"Cause" is not defined in the Bankruptcy Code; thus, it is for the Court determine, on a case by case basis, what constitutes cause.  *In re Robbins*, 964 F.2d at 345.  The Fourth Circuit Court of Appeals set forth factors in *In re Robbins* that the Court should consider in determining whether cause exists to terminate the automatic stay.  There are 4 primary factors for the Court to consider in determining whether cause exists to grant relief from the automatic stay.  Those are: (1) whether only state law issues are involved; (2) whether judicial economy will be promoted; (3) whether litigation in state court will interfere with the bankruptcy case; and (4) whether the estate can be protected by requiring that any judgments obtained be enforced only through the bankruptcy court. *Id.*; *In re Granati*, 271 B.R 89, 93 (Bankr. E.D. Va. 2001).  In considering these factors, the Court must balance the potential prejudice to the estate against the hardships that would be incurred by the person seeking relief if the motion is denied. *In re Robbins*, 964 F.2d at 345.

The evidence adduced at the hearing relating specifically to the Motions for Relief was meager.  Abbas admitted he was delinquent on the payment of his real estate taxes on the Personal Residence to the City of Virginia Beach but further stated some of the delinquency was provided for in his Amended Chapter 13 Plan, and it was his intention to bring the remaining unpaid post-petition portion current in January 2008.  Abbas asserted he was current in his payments on the first mortgage, the hazard insurance, and the homeowner association dues on his Personal Residence.  No evidence to the contrary was introduced.  Abbas has not made a payment to Legacy in three years.  It highly unclear from the testimony of Stewart, the managing member of Legacy, how the balance allegedly owed to Legacy by Abbas was derived, particularly given Stewart's admission that the amount initially advanced by Legacy on behalf of Abbas to the first mortgage holder on the Personal

24

Residence was $24,342.00 and subsequent advances totaled $4,306.73, an amount substantially less than the $71,153.37 judgment taken by Legacy against Abbas by default and the $78,367.80 amount that Legacy claimed to be owed at the time of the filing of the Chapter 13 Case. No evidence was offered as to the current market value of the Personal Residence.

While it appears certain Abbas has made no payments to Legacy for an extended period of time, there is an insufficient basis at this juncture to find cause for the granting of relief has been established.[22] There is no evidence as to the value of the Personal Residence. There is substantial concern as to what is the balance on the indebtedness of Abbas to Legacy. Further, given this Court's conclusion as to the lack of good faith on the part of Abbas concerning his failure to schedule the Pakistani Property in the Chapter 7 Case, it is likely this proceeding will ultimately be converted to a proceeding under Chapter 7 of the Bankruptcy Code and a trustee appointed to liquidate Abbas's property.[23] A conclusion as to the granting of relief to Legacy should await these anticipated events so the interests of the other creditors of Abbas in the Chapter 7 Case may be asserted by a trustee. For the same reasons, relief is also denied as to Hina Abbas pursuant to 11 U.S.C. § 1301.[24]

A separate order will be entered denying the Motion for Relief from Stay and Co-debtor Stay

---

[22] At the conclusion of the hearings on November 15, 2007, the Court permitted the parties to file memoranda of law within fourteen days. Counsel for Legacy filed a memorandum, which addressed the issue of enforcement of promissory note terms when the note has been reduced to judgment. Because the Court finds that Legacy did not carry its burden of showing cause, the Court need not reach that issue.

[23] Indeed, the Debtor's substitute counsel filed a Motion to Reopen Chapter 7 Case To Allow Debtors' to Amend Schedule A To Include Real Property on December 13, 2007, in Abbas's Chapter 7 case. While the Court will consider this Motion in due course, it does not affect the Court's current treatment of the issues before it.

[24] There has been no evidentiary showing here by Legacy that the provisions of 11 U.S.C. §§ 1301(c) (1), (2), or (3) have been satisfied.

of Legacy without prejudice and enjoining Abbas from taking any action in relation to the Pakistani Property.

The Clerk is ORDERED to forward a copy of this Memorandum Opinion to John E. Bedi, counsel for Abbas; Sara A. John, counsel for Legacy; George W. Neal, Chapter 13 Trustee; and to Debera F. Conlon, Assistant United States Trustee.

Entered this **20th** day of December, 2007, at Norfolk in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge